O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO D. B., <br>     Plaintiff, <br> v. <br> MICHELLE KING, Acting Commissioner of Social Security[1], <br>     Defendant. | Case No. 5:24-cv-01096-KES <br><br> MEMORANDUM OPINION AND ORDER |

On May 22, 2024, Plaintiff Angelo D. B. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) Plaintiff filed a corrected Plaintiff's Brief under Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). ("PB" at Dkt. 17.) Defendant filed a responding Commissioner's Brief under Rule 7. ("CB" at Dkt. 23.) Plaintiff filed a Reply Brief on December 27, 2024. ("PRB" at Dkt. 24.)

---

[1] Michelle King became Acting Commissioner of Social Security on January 20, 2025. Under Federal Rule of Civil Procedure 25(d), she is automatically substituted as Defendant in this suit. The Clerk is directed to update the electronic docket accordingly.

This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## I.

## BACKGROUND

Plaintiff initially applied for child's insurance benefits based on disability and supplemental security income in 2014, alleging a disability onset date of January 1, 2000, at age thirteen. Administrative Record ("AR") 83, 112. After both applications were denied, Plaintiff attended a hearing and testified before an administrative law judge ("ALJ") on February 2, 2017. AR 83. On August 2, 2017, ALJ Andrew Verne issued an unfavorable decision. AR 80-104. ALJ Verne found that Plaintiff had some limitations, but overall was not disabled. AR 88, 99.

In November 2021, Plaintiff submitted an application for adult Supplemental Security Income ("SSI") and any federally administered State supplementation under Title XVI of the Social Security Act alleging disability as of June 15, 2005. AR 235. On April 18, 2023, ALJ Josephine Arno conducted a hearing at which Plaintiff, who was represented by counsel, testified, as did a vocational expert ("VE"). AR 64-79. On August 16, 2023, the ALJ issued another unfavorable decision. AR 19-39.

First, ALJ Arno noted that Plaintiff's prior application for disability insurance benefits and SSI had been denied in August 2017 by ALJ Verne. AR 22, citing AR 80-104. The ALJ found that Plaintiff had rebutted the presumption of continuing non-disability under 20 C.F.R. § 416.936 and Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988) by presenting new evidence of changed circumstances. AR 22.

Next, ALJ Arno found that Plaintiff suffered from the following severe, medically determinable impairments ("MDIs"): "non-epileptic seizures, degenerative disc disease of the lumbar spine, bipolar II disorder, generalized anxiety disorder, and posttraumatic stress disorder [("PTSD")] …." AR 25.

Despite these MDIs, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following additional restrictions:

> [Plaintiff] may have no exposure to unprotected heights and moving or heavy machinery; may have no exposure to open bodies of water; may never climb ladders, ropes, or scaffolds; is able to understand, remember and carry out simple, routine work tasks but not at a production rate pace, for example, no assembly line jobs; may tolerate occasional workplace changes; and may have occasional interaction with coworkers, supervisors, and the public.

AR 28.

Based on these RFC findings, the VE's testimony, and other evidence, the ALJ found that Plaintiff could work as an industrial cleaner (Dictionary of Occupational Titles ("DOT") 381.687-018), kitchen helper (DOT 318.687-010), and laundry worker (DOT 361.685-018) (the "Alternative Jobs"). AR 34. The ALJ concluded that Plaintiff was not disabled. AR 35.

## II.

## ISSUES PRESENTED

Issue One: Whether the ALJ erred in crafting Plaintiff's RFC by (1) failing to "comply with the directives of Chavez v. Brown" or (2) making factual findings that lack substantial evidentiary support. (PB at 1.[2])

Issue Two: Whether the ALJ erred by failing to adopt certain opinions by psychiatric consultative examiner Sohini Parikh, M.D., or give reasons for rejecting them. (Id.)

Issue Three: Whether the ALJ erred by failing to provide clear and convincing reasons to discount Plaintiff's subjective symptom testimony. (Id.)

---

[2] Brief citations refer to the pagination imposed by the Court's e-filing system.

3

## III.

## DISCUSSION

**A. <u>ISSUE ONE: Compliance With Chavez.</u>**

    **1. Summary of the <u>Chavez</u> Standard.**

In <u>Chavez v. Bowen</u>, 844 F.2d 691 (9th Cir. 1988), the Ninth Circuit held, "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings." <u>Id.</u> at 693. "Normally, an ALJ's findings that a claimant is not disabled 'creates a presumption that the claimant continued to be able to work after that date.'" <u>Vasquez v. Astrue</u>, 572 F.3d 586, 597 (9th Cir. 2009) (citation omitted). "The presumption does not apply, however, if there are 'changed circumstances.'" <u>Lester .v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1995) (citation omitted).

Guidelines from the Social Security Administration provide a blueprint for the application of the <u>Chavez</u> decision:

> In order to rebut the presumption of continuing nondisability, a claimant must prove "changed circumstances" indicating a greater disability. In addition, the court [in <u>Chavez</u>] indicated that where the claimant rebuts the presumption by proving a changed circumstance, principles of res judicata require that certain findings contained in the final decision by the ALJ on the prior claim must be given some res judicata consideration in determining whether the claimant is disabled … The court concluded that where the final decision on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, [the agency] may not make different findings in adjudicating the subsequent disability unless there is new and material evidence ....

Social Security Acquiescence Ruling ("SS AR") 97-4(9).

Similarly, once a claimant has been found disabled, the ALJ must presume that the disability still exists in subsequent proceedings. Patti v. Schweiker, 669 F.2d 582, 587 (9th Cir. 1982). If the ALJ finds that the claimant's condition has improved, then he or she must identify evidence of such improvement. Murray v. Heckler, 722 F.2d 499, 500 (9th Cir. 1983). An evidentiary finding of improvement is "essential to rebut the presumption of continuing disability." Id. at 501. The evidence must actually be substantial, and a "mere scintilla" of evidence suggesting a medical improvement is insufficient. Young v. Kijakazi, No. 1:21-cv-00654, 2023 U.S. Dist. LEXIS 4284, 2023 WL 144222, at *7 (E.D. Cal. Jan. 9, 2023) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

This principle may also apply to RFC findings, not just ultimate findings that a claimant is or is not disabled. At least one district court has found that ALJs are required to give "some res judicata consideration" to a previous ALJ's more restrictive RFC findings. Guerrero v. Kijakazi, No. 1:20-cv-01766, 2022 U.S. Dist. LEXIS 98624, 2022 WL 1811219 at *8 (E.D. Cal. Jun. 1, 2024) (quoting Chavez, 844 F.2d at 694) (holding that the second ALJ's assertion that "new and material" medical evidence justified his finding that plaintiff was now capable of light work, even though the previous ALJ found that plaintiff was only capable of sedentary work, was not supported by substantial evidence). It is the Commissioner who "bears the burden of establishing that a claimant has experienced medical 'improvement' that would allow him to engage in substantial gainful activity." Id. at *7 (citation omitted). A finding that a claimant is capable of more intensive work must be "supported by substantial evidence," or else the conclusion is erroneous. Id. at *9. If the record shows that the claimant's position has not changed or has worsened over time, then the ALJ has failed to meet this standard. Id.

**2. Relevant Administrative Proceedings.**

ALJ Arno's decision acknowledges that there is a "rebuttable presumption of continuing nondisability" under the standard set forth in SS AR 97-4(9). AR 22. ALJ Arno also acknowledged that "even when the presumption of continuing nondisability has been rebutted, unless there is new and material evidence relating to the findings under the sequential evaluation process for determining disability with respect to the unadjudicated period or there has been a change in the law, regulations or rulings affecting those findings or the method for arriving at those findings, [the ALJ] must adopt the specific findings of the prior ALJ under the sequential evaluation process for determining disability." AR 22. ALJ Arno then found that there was "new and material evidence" in this case "related to findings concerning … [Plaintiff's] residual functional capacity." AR 23. For this reason, ALJ Arno declined to "adopt all such findings from the final decision on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period." AR 23. Instead, ALJ Arno adopted an RFC less restrictive than the RFC adopted by ALJ Verne.

In the initial 2017 decision, ALJ Verne found that Plaintiff could "remember and understand simple one to two-step procedures" and "make simple work-related decisions." AR 88. ALJ Verne also found that Plaintiff "would work best in structured environments with predictable work tasks." AR 88. These RFC findings are consistent with Level 1 Reasoning Development according to the DOT. See DOT Appendix C (4th ed. 1991) (defining Level 1 Reasoning as "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."). ALJ Verne found that Plaintiff could perform the jobs of garment folder (DOT 789.687-066), textile assembler (DOT 780.687-046), or small parts assembler (DOT 929.587-010) (AR 98-99), all of which require only Level 1 Reasoning.

1  By contrast, ALJ Arno found that Plaintiff had the RFC to "understand,
2  remember, and carry out simple routine work tasks but not at a production rate
3  pace" and "may tolerate occasional workplace changes." AR 28. This reflects
4  medical improvement from the 2017 decision. ALJ Arno's RFC findings are more
5  consistent with Level 2 Reasoning Development. See DOT Appendix C (defining
6  Level 2 Reasoning as "Apply commonsense understanding to carry out detailed but
7  uninvolved written or oral instructions. Deal with problems involving a few
8  concrete variables in or from standardized situations."). The Alternative Jobs
9  identified by ALJ Arno all require Level 2 Reasoning.

### 3. Analysis of Claimed Error.

First, Plaintiff contends that ALJ Arno erred by adopting mental RFC findings different from those of ALJ Verne without discussing Chavez. (PB at 8.) ALJ Arno did discuss the Chavez standard and explain why the prior finding that Plaintiff was not disabled would not be given res judicata effect. AR 22-23. Plaintiff has not cited any authority that ALJs must discuss Chavez in connection with every factual finding from a prior administrative decision. But even if ALJs were required to apply Chavez in this manner, the ALJ satisfied Chavez's requirement by explaining how medical improvement justified a less restrictive mental RFC, as discussed below.

Next, Plaintiff contends that ALJ Arno's findings that Plaintiff could do simple, routine tasks and tolerate occasional changes in the workplace lack substantial evidentiary support because there is no evidence of medical improvement. (PB at 8-11.) To the contrary, the ALJ expressly found evidence of medical improvement, stating that the "evidence of record … is replete with examples of [Plaintiff's] improved condition." AR 30. For example, the record shows that in January 2021, psychotropic medications had helped Plaintiff improve his mental condition. AR 30, citing AR 798. On November 18, 2021, Visit Chatsuthiphan, M.D., noted that Plaintiff was "feeling better" and "improving;" he

7

had a "more stable mood," and most, if not all, of his symptoms had improved. AR 798.

Plaintiff also confirmed that, as of February 4, 2022, his seizures had become less frequent due to his medications. AR 30, citing AR 283. The evidence also shows that Plaintiff's seizure disorder improved due to psychiatric treatment. AR 30, citing AR 364. Plaintiff repeatedly stated in 2021 and 2022 that medication helped control his pain, such that pain was less likely to distract him. AR 30, citing AR 583, 586, 603, 755. The ALJ found that, because the record contains multiple statements showing that Plaintiff's symptoms were either stabilized or improving, "evidence about the duration and frequency of the claimant's symptoms does not support the level of symptomology that the claimant alleged." AR 30. Therefore, Plaintiff has not shown that the ALJ erred under Chavez.

## B. ISSUE TWO: Dr. Parikh.

### 1. Legal Standard.

In January 2017, the Social Security Administration ("SSA") issued revised regulations for evaluating medical opinions for claims filed on or after March 27, 2017. The regulations provide that ALJs will no longer "defer or give any specific evidentiary weight" to any medical opinions. 20 C.F.R. § 416.920c(a). Instead, ALJs must explain how persuasive they find each medical opinion upon considering a list of factors. Id. § 416.920c(c). Of these factors, the two most important are "supportability" and "consistency." Id. § 416.920c(b)(2). The more a medical source presents support from the available, objective medical evidence and the more consistent a medical opinion is "with the evidence from other medical sources and nonmedical sources," the more weight an ALJ will give that opinion. Id. § 416.920c(c)(1)-(2). ALJs must explain how they considered supportability and consistency. Id. § 416.920c(b)(2).

### 2. Relevant Administrative Proceedings.

On April 16, 2022, Dr. Parikh, the psychiatric consultative examiner,

conducted a complete psychiatric evaluation of Plaintiff. AR 736-49. She reviewed the history of Plaintiff's present illness, including his use of marijuana, his anxiety and depression, and his non-epileptic, psychogenic seizures. AR 737-38. She noted that Plaintiff worked at the Department of Parks and Recreation for the County of Los Angeles for about a year and a half, but he stopped working at age sixteen because of his seizure disorder. AR 740.

Dr. Parikh reviewed Plaintiff's current level of functioning as well as his mental status. AR 741. She found that he was "able to manage funds and pay bills" and could cook, shop, and do household chores, though "most of the household work and cooking is done by his wife." AR 741. She found that he would "focus attention," did "not have cognitive problems completing household tasks," could "follow simple oral and written instructions," and had "no difficulty making decisions." AR 741. As for Plaintiff's mental status, Dr. Parikh found that Plaintiff's "gestures were normal" and that he made good eye contact. AR 741. He was alert, cooperative, and attentive during the evaluation, though his "speech was significant for stuttering." AR 742. Plaintiff "was oriented to person, place, time, and the purpose of the visit" and his "thoughts were logical," although his mood was "depressed and anxious" and he "admitted to hearing voices … [and] to having paranoid ideation." AR 742.

At the end of her evaluation, Dr. Parikh diagnosed Plaintiff with bipolar disorder, PTSD, and marijuana use. AR 744. She determined that Plaintiff had no restrictions in his daily activities. AR 745. She also found no impairment in his "concentration, persistence, and pace" or his "ability to understand, carryout, and remember simple instructions …." AR 745. She did find "moderate mental difficulties in maintaining social functioning" and the possibility of "moderate episodes of emotional deterioration in work-like situations." AR 745. She also found moderate impairments in his ability to "understand, carryout, and remember complex instructions," to respond "to coworkers, supervisors, and the general

1  public," to "respond appropriately to usual work situations," to "deal with changes
2  in a routine work setting," to "maintain regular attendance," and to "complete a
3  normal workday or work week without interruptions resulting from [his]
4  psychiatric condition."  AR 745-46.

5        ALJ Arno found Dr. Parikh's medical opinion "persuasive."  AR 32, citing
6  AR 736-49.  She found that Dr. Parikh's opinion "is supported by the examination
7  of [Plaintiff], references to specific findings, and well-supported explanations."
8  AR 32.  The opinion was also persuasive because it "is consistent with evidence
9  from other medical or nonmedical sources."  AR 32.  For example, the ALJ found
10  that Dr. Parikh's opinion was consistent with other findings that Plaintiff "had
11  normal appearance, cooperation, dress, speech, thoughts, alertness, orientation,
12  concentration, memory, and intellectual functioning."  AR 32, citing AR 799
13  (summary of appointment with Dr. Chatsuthiphan on January 22, 2021, during
14  which the doctor found that Plaintiff's thoughts were logical, his mood was
15  "appropriate [and] anxious," he was "alert [and] oriented," his concentration was
16  good, his memory was intact, his intellectual functioning was average, and his
17  insight and judgment were adequate).  Dr. Parikh's opinion was also consistent
18  with medical records confirming that Plaintiff's seizures were "under improved
19  control with psychiatric treatment."  AR 32, citing AR 364.  Finally, ALJ Arno
20  found Dr. Parikh's opinion persuasive because "the consultative examiner actually
21  examined" Plaintiff.  AR 32.

22        **3. Analysis of Claimed Error.**

23        Plaintiff contends that the ALJ found Dr. Parikh's opinions persuasive but
24  failed to adopt her "opined limitations," including her opinions of Plaintiff's
25  moderate impairments and potential "moderate episodes of emotional deterioration
26  in work-life situations."  (PB at 12, citing AR 745-46.)  According to Plaintiff, the
27  RFC failed to include "limitations corresponding to Plaintiff's difficult[ies]
28  responding to usual work situations, maintaining attendance, and dealing with

interruptions from psychiatric symptoms." (Id.) Plaintiff contends that the ALJ was required to either adopt these opinions or explain why they lacked supportability and consistency, and her failure to do so constitutes legal error. (Id. at 11-12.)

Defendant argues that Dr. Parikh "opined Plaintiff had no more than moderate limitations in his functioning," and the ALJ properly translated Dr. Parikh's opinion into concrete limitations. (CB at 15.) Defendant contends that the ALJ properly accounted for the moderate limitations described in Dr. Parikh's opinion "by limiting Plaintiff to simple routine work without a production rate pace; only occasional workplace changes; and limited social interaction." (Id. at 16, citing AR 28.) Finally, Defendant contends that, even if the ALJ did fail to address Dr. Parikh's moderate limitations, the error "would not have affected the ultimate nondisability determination because the limitation[s are] not quantified." (Id. at 17 (citation omitted).)

ALJ Arno reviewed Dr. Parikh's opinion and determined that it was both supported by and consistent with the evidence in the record. The ALJ articulated her findings of supportability, stating that Dr. Parikh's "medical opinion is supported by the examination of the claimant, references to specific findings, and well-supported explanations." AR 32. She also found that the opinion was consistent with multiple pieces of evidence from the record, including Plaintiff's appearance, concentration, intellectual functioning, and improvement with treatment. AR 32.

The ALJ addressed the "moderate mental limitations" in her RFC findings. AR 32. The ALJ found Plaintiff "may tolerate occasional workplace changes" and "may have occasional interaction with coworkers, supervisors, and the public." AR 28. These limitations account for the "difficult[ies] responding to usual work situations, maintaining attendance, and dealing with interruptions from psychiatric symptoms" opined by Dr. Parikh that Plaintiff alleges were omitted from the ALJ's

11

decision. (PB at 12, citing AR 745-46.) Likewise, ALJ Arno determined that Plaintiff "is able to understand, remember and carry out simple, routine work tasks but not at a production rate pace." AR 28. This is consistent with Dr. Parikh's opinion that "[t]here are no mental restrictions in [Plaintiff's] daily activities." AR 745. Ultimately, by reducing the stressors that Plaintiff would face at work, the ALJ also addressed Dr. Parikh's opinion that Plaintiff would have moderate difficulties with attendance. AR 28, 746.

Therefore, ALJ Arno did not err in her treatment of Dr. Parikh's opinion.

## C. ISSUE THREE: Plaintiff's Symptom Testimony.

### 1. Legal Standard.

The ALJ engages in a two-step analysis to evaluate a claimant's subjective symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first step, the ALJ may discredit the claimant's subjective symptom testimony only by making specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). Unless an ALJ finds that a claimant is malingering or has failed to provide objective medical evidence in support of his or her testimony, an ALJ must provide clear and convincing reasons for rejecting a claimant's subjective testimony about the severity of experienced symptoms. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). While an ALJ's findings must be properly supported and sufficiently specific to assure a reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective

statements, an ALJ is not "required to believe every allegation" of disability. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); Lavon S. v. Kijakazi, No. 23-00981-KES, 2023 U.S. Dist. LEXIS 214528 at *5-6 (C.D. Cal. Nov. 29, 2023).

**2. Relevant Administrative Proceedings.**

The ALJ summarized Plaintiff's testimony from the hearing, a Disability Report, a Function Report, and a Seizure Questionnaire. AR 29, citing AR 261-69, 273-81, 282-85, 64-79. Plaintiff "reported [that] symptoms arising from posttraumatic stress disorder, bipolar disorder, depression, seizures, chronic back pain, and kidney stones primarily limited [his] ability to work." AR 29, citing AR 262, 282-85, 70-75. The ALJ found that Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record …." AR 29.

As reasons, the ALJ cited (1) lack of support from objective medical records; (2) improvement with treatment; (3) inconsistent statements regarding the side effects of medications; (4) inconsistent statements regarding the effectiveness of medications to improve his mental health; and (5) inconsistences between Plaintiff's symptom reporting and "other evidence and the observations of others," specifically between Plaintiff's claims that he "had difficulty walking because of pain" and findings that he had a normal, steady gait. AR 30-31.

**3. Analysis of Claimed Error.**

    a.   Improvement with Treatment: Seizure Disorder and Pain Testimony.

The ALJ cited evidence that Plaintiff's seizures became less frequent and he experienced less pain due to treatment and medication, and she determined that these findings are inconsistent with his subjective symptom testimony. AR 30, citing AR 283, 583, 586, 755. Plaintiff contends that, while he did experience some improvement in his seizures and the pain he experienced, his seizures

"nonetheless persisted to a degree that interferes with functioning." (PB at 14-15, citing AR 71, 75.) He testified that he still experiences seizures "monthly or weekly," despite being on medications. AR 71. Plaintiff also argues that the ALJ "cherry-picks quotations" from the documents cited in her decision that suggest Plaintiff's back pain has improved, when the records actually show that Plaintiff continued to experience intense pain. (PB at 15, citing AR 28, 580.) Plaintiff contends that the records cited by the ALJ "show only partial improvement," and "experiencing 'improvement' does not necessarily indicate that pain resolved." (Id., citing Jana D. R. v. Saul, 2021 WL 2826436, at *4 (C.D. Cal. Jul. 7, 2021).) Therefore, Plaintiff argues, the ALJ did not provide "a clear and convincing reason for discounting his testimony regarding ongoing symptoms and flares of increased symptoms." (Id.)

     ALJ Arno cited numerous specific examples in her decision to demonstrate that Plaintiff's condition had significantly improved and he experienced fewer seizures. In fact, she said that the evidence of record "is replete with examples of [his] improved condition." AR 30. The ALJ cited to specific medical records that provided evidence of improvements in Plaintiff's epilepsy and reduced pain due to medication. AR 30, citing AR 364 (October 8, 2021: progress note by Varinder Kaur, LVN, reporting that Plaintiff's psychogenic nonepileptic spells "are ongoing but under improved control with psychiatric treatment, on lamotrigine and levetiracetam"); AR 583, 586, 603, 755 (Progress notes by Pamela Moore, PA, between May 2021 and July 2022, stating that Plaintiff reported that Naloxone adequately controlled his pain and that he took the medication daily without side effects). The ALJ also cited to evidence in the record which states that "medications reduced the frequency of Plaintiff's seizures." AR 30, citing AR 283.

     While Plaintiff claims the ALJ "cherry-picks" evidence to show that Plaintiff's condition improved (PB at 15.), the Court reviews the decision for

whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. Brown-Hunter, 806 F.3d at 488-89. Plaintiff testified at the oral hearing that, despite taking medications for his seizure disorder, he still has seizures about once per week. AR 71. However, as the ALJ pointed out, even if Plaintiff continues to experience some symptoms from his seizure disorder, his condition has still improved because "medications reduced the frequency of his seizures." AR 30, citing AR 283. He also testified that, despite his pain medications, he still struggles to lift, carry, and stand due to his pain. AR 72. However, the ALJ correctly determined that examples in the record clearly demonstrated that medications helped control Plaintiff's pain, contradicting his hearing testimony. AR 30, citing AR 583, 586, 603, 755. This evidence shows that the ALJ did not arbitrarily discredit Plaintiff's testimony, but instead pointed to contradictory notes from the record as a whole. Fair, 885 F.2d at 603.

Plaintiff also argues that, even if his condition did improve, the improvement was not enough for the ALJ to determine that he is not disabled. (PB at 15.) However, as Defendant states, the regulations require the ALJ to "evaluate[] the intensity and persistence of the claimant's symptoms and determine[] the extent to which those symptoms limit the claimant's capacity to work." (CB at 11, citing 20 C.F.R. § 416.929.) As discussed above, the ALJ found numerous inconsistencies with the Plaintiff's hearing testimony and his statements to physicians, which are noted throughout the medical record. See AR 30. The ALJ was not required to determine that Plaintiff had improved completely in order to find that he was not disabled; she merely needed to determine whether he had improved more than he claimed and enough work at the Alternative Jobs. AR 34. The examples in the medical record cited to by the ALJ sufficiently support her determination that Plaintiff's condition had improved enough so that he could perform jobs requiring Level 2 reasoning. AR 30, 34. The ALJ also noted that Plaintiff had some physical limitations and incorporated these into his RFC. AR 28. She determined

15

that he "may have no exposure to unprotected heights and moving or heavy machinery" and "may never climb ladders, ropes, or scaffolds." AR 28. These limitations account for any pain and seizure symptoms Plaintiff continues to experience.

### b. Medication Side Effects

At the hearing, Plaintiff testified that he experienced side effects from his medications, including dizziness and "feeling tired." (AR 75.) The ALJ properly found that Plaintiff's testimony was inconsistent with multiple statements in the record that his medications did not cause side effects. AR 30, citing AR 583 (11/19/21 Progress Notes: Plaintiff denied any side effects resulting from his medication regimen), AR 586 (10/15/21 Progress Notes: Plaintiff denied any side effects resulting from his medication regimen); AR 593 (10/17/21 Progress Notes: Plaintiff denied any side effects resulting from his medication regimen); AR 603 (5/21/21 Progress Notes: Plaintiff denied any side effects resulting from his medication); AR 755 (7/15/22 Progress Notes: Plaintiff denied any side effects resulting from his medication).

### c. Improvement with Treatment: Mental Health.

The ALJ reviewed Plaintiff's testimony regarding his mental health symptoms and found "that the effectiveness of medications does not support the level of symptomology that [Plaintiff] alleged." AR 30. For example, the ALJ noted that when Plaintiff "was compliant with psychotropic medications, he had improvement in his condition, felt better, was calmer, was less impulsive, was less depressed, was less anxious, was more stable, had better concentration, slept adequately, and had normal thought content." AR 30, citing AR 798. This contradicts Plaintiff's testimony that, when taking medications, he still has disabling "symptoms related to" his mental health conditions, including PTSD, bipolar disorder, depression, and anxiety. AR 75. Plaintiff argues that the ALJ's findings of improvement in Plaintiff's mental conditions are vague, and this

1  finding "again fails to state a basis for discounting the symptoms that remained
2  despite medications." (PB at 16.)  Defendant argues that the record shows
3  improvement in Plaintiff's mental state, and "Plaintiff said that he felt better and
4  was calmer, less impulsive, less depressed, less anxious, more stable, had better
5  concentration, slept adequately, and had normal thought content when compliant
6  with his medications." (Id., citing AR 30.)

7  The ALJ properly found that Plaintiff's subjective symptom testimony was
8  inconsistent with evidence in the record and supported this finding with sufficient
9  evidence.  She noted in her decision that, although Plaintiff "made subjective
10 complaints about mental health symptoms," his mental health condition improved
11 when he "was compliant with psychotropic medications."  AR 30.  The ALJ cited
12 to records from Plaintiff's psychiatrist, who noted significant improvement in his
13 mental condition, along with a lack of side effects from his medications.  AR 798.
14 At that mental status exam on November 18, 2022, Plaintiff appeared "[c]alm,
15 cooperative, adequately dressed[,] groomed and clean" and "felt better, was
16 calmer, was less impulsive, was less depressed, was less anxious, was more stable,
17 had better concentration, slept adequately, and had normal thought content."  AR
18 30, citing AR 798.  The ALJ cited to other mental status examinations at which
19 Plaintiff displayed few or mild mental health symptoms.  AR 31-32, citing AR
20 356, 363, 681, 682, 799, 802, 805, 808, 743.  This evidence is sufficient to
21 demonstrate inconsistencies with Plaintiff's subjective symptom testimony.

22                    d.  Lack of Objective Support: Pain Testimony and Gait.

23 Plaintiff alleges that the ALJ similarly discounted his pain testimony "based
24 on objective findings of regular gait." (Id., citing AR 30-31.)  Defendant argues
25 that "much of [Plaintiff's] treatment record indicated that [his] treatment
26 significantly reduced his symptoms," including his seizures and pain. (CB at 14,
27 citing AR 365, 583, 586, 590, 593, 755.)  Defendant claims that the ALJ's
28 determination "that Plaintiff's allegations were not consistent with the overall

17

record" was reasonable. (Id.)

The ALJ properly found that Plaintiff's claims that he "had pain with ambulation and struggled walking for extended periods" were "inconsistent with other evidence and the observations of others" that Plaintiff had a "normal gait" and "denied gait problems." AR 30-31, citing AR 360 (10/8/2021: Emergency Department notes by Krystyna Harkey, RN, reporting that Plaintiff ambulated with a normal gait), AR 364 (10/8/2021: progress note by Dr. Varinder noting that Plaintiff had a normal gait), AR 402 (June 25, 2021: progress note by Philip Han-Yuan Tseng, MD, rating Plaintiff's hip flexion as "5" on both sides), AR 423 (October 19, 2020: general surgery clinic note by Christopher Nguyen, MD, reporting that Plaintiff's gait was normal), AR 736 (April 16, 2022: complete psychiatric evaluation by Dr. Parikh, observing that Plaintiff's "posture and gait were normal), AR 912 (December 14, 2021: progress note by Krystle Sharna Bocanto Bekalo-Quinlan, NP, noting that Plaintiff had a "steady regular gait"). Therefore, the ALJ did not err in finding that Plaintiff's subjective symptom testimony regarding how his pain symptoms affected his ability to walk were inconsistent with the evidence presented in the medical record, and the ALJ provided ample evidence to support this position.

## IV.
## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

DATED: January 30, 2025

_____
KAREN E. SCOTT
United States Magistrate Judge